UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

JEFF WRIGHT,                          )
                                     )
                Plaintiff,            )
                                     )
        v.                           )          No. 1:22-cv-02144-KMB-JMS
                                     )
DRAEGER, INC,                        )
                                     )
                Defendant.           )
_____  )
                                     )
DRAEGER, INC,                        )
                                     )
                Counter Claimant,    )
                                     )
        v.                           )
                                     )
JEFF WRIGHT,                         )
                                     )
                Counter Defendant.   )

## <u>ORDER</u>

Presently pending before the Court are four motions:  Defendant Draeger, Inc.'s Motion to Strike Plaintiff's Amended Affirmative Defense No. 2, [dkt. 42], Plaintiff Jeff Wright's Motion for Judgment on the Pleadings, [dkt. 47], Plaintiff Jeff Wright's Motion for Summary Judgment, [dkt. 60], and Defendant Draeger, Inc.'s Motion for Summary Judgment, [dkt. 65].

For the reasons detailed below, Defendant Draeger, Inc.'s Motion to Strike Plaintiff's Amended Affirmative Defense No. 2, [dkt. 42], Plaintiff Jeff Wright's Motion for Judgment on the Pleadings, [dkt. 47], and Defendant Draeger, Inc.'s Motion for Summary Judgment, [dkt. 65], are each **DENIED.**  Plaintiff Jeff Wright's Motion for Summary Judgment, [dkt. 60], is **GRANTED IN PART** and **DENIED IN PART.**

## I.   RELEVANT BACKGROUND[1]

Plaintiff Jeff Wright began employment with Defendant Draeger, Inc. ("Draeger") as a salesman in March 2017.  [Dkts. 61 at 2; 65-1 at 1.]  Mr. Wright received an offer letter, which he signed, stating in part that he would receive an annual base salary of $50,000 and that variable compensation would be targeted at $90,000 for 2017.  [Dkt. 7-1 at 2-4.]  Draeger's offer letter that Mr. Wright signed also stated that "I hereby acknowledge and agree that this offer letter does not constitute a contract of employment and that I will continue to be an at-will employee for all purposes."  [*Id.* at 4.]

Beginning with his first paycheck, on April 7, 2017, Draeger paid Mr. Wright a rate that annualized to $90,000.  [Dkts. 61 at 2; 65-1 at 1-2.]  Mr. Wright's compensation was evidenced on Earnings Statements and annual W-2s issued by Draeger, as well as internal Personnel Action Forms that were approved by Draeger employees.  [Dkts. 66-8 at 2-198; 62-1 at 5-19; 62-3 at 9, 12, 15, 17, 19, 21, and 25.]  Draeger alleges that this rate of pay was due to a clerical mistake, that Mr. Wright should have been paid an annual salary of $50,000, and that it did not realize its mistake until April 2022.  [Dkt. 65-1 at 1-2.]  In April 2022, Draeger held a video conference with Mr. Wright to discuss this alleged overpayment.  [Dkts. 61 at 3; 65-1 at 2.]  On that call, Mr. Wright initially offered to pay back a portion of his salary to Draeger.[2]  [*Id.*]  Draeger subsequently

---

[1] The following factual background is set forth pursuant to the summary judgment standard explained below.  The facts stated herein are not necessarily objectively true, but "[w]here, as here, the court considers cross-motions for summary judgment, the court views the facts and inferences in the light most favorable to the nonmoving party on each motion."  *Persinger v. Sw. Credit Sys., LP*, 2020 WL 8024357, at *2 (S.D. Ind. Dec. 8, 2020).

[2] Mr. Wright states that his offer to repay was motivated by a desire to maintain his health insurance because his wife had been diagnosed with dementia and was in hospice care.  [Dkt. 61 at 3.]  In two separate filings, Draeger states that "Wright repeatedly asserts [his wife's] condition *as some sort of excuse* for why he failed to say anything to Draeger about the overpayments.  Of course, *this excuse* is a tacit admission by Wright that a mistake was made and he was being overpaid."

terminated Mr. Wright on June 29, 2022, [dkts. 61 at 3; 65-1 at 2], and withdrew approximately $29,000 from Mr. Wright's retirement account, [dkts. 1-1 at 8, ¶ 25; 7 at 11, ¶¶ 38-39].  Draeger alleges that after accounting for the money it has already withdrawn from Mr. Wright's retirement account, "the total amount Wright owes to Draeger is $173,399."  [Dkt. 65-1 at 9, ¶ 46.]

Mr. Wright filed this lawsuit in an Indiana state court on October 18, 2022, alleging that a "dispute presently exists between Wright and Draeger as to Wright's correct compensation between March 27, 2017, and June 29, 2022."  [Dkt. 1-1 at 8, ¶ 26.]  Mr. Wright requested that the court enter a declaratory judgment pursuant to Indiana's Declaratory Judgment Statute, Indiana Code § 34-14-1-2, determining Mr. Wright's "true and accurate salary during his period of employment by Draeger."  [*Id.* at 8, ¶ 29.]

Draeger removed the case to this Court on November 4, 2022, invoking the Court's diversity jurisdiction.  [Dkt. 1.]  Draeger subsequently filed its answer to Mr. Wright's complaint along with six counterclaims, including (1) breach of contract, (2) breach of fiduciary duty, (3) unjust enrichment, (4) conversion, (5) money had and received, and (6) a declaratory judgment that Draeger's withdrawal of assets from Mr. Wright was lawful.  [Dkt. 7.]

## II.   JURISDICTION

Before turning to the merits of the pending motions, the Court must address its jurisdiction over this case.  While Mr. Wright does not challenge Draeger's assertion that diversity jurisdiction exists, the Court has an independent obligation to confirm that it has jurisdiction over a case.  *Hertz*

---

[Dkts. 65-1 at 7 n.1; 66 at 9 n.1 (emphases added).]  Draeger's wording in this context is insensitive, unprofessional, and unnecessary to make the point it intended.  Draeger's counsel are reminded that by practicing in this Court, they have agreed to be bound by the Standards for Professional Conduct within the Seventh Federal Judicial Circuit, which explicitly provide that "[a] lawyer's conduct should be characterized at all times by personal courtesy and professional integrity in the fullest sense of those terms."  *See* S.D. Ind. L.R. 83-6(d)(3).

*Corp. v. Friend*, 559 U.S. 77, 94 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it.").

District courts "shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States." 28 U.S.C. § 1332(a)(1). Draeger asserts that it is incorporated and has its principal place of business in Pennsylvania, and thus is a citizen of Pennsylvania for jurisdictional purposes. [Dkt. 7 at 8, ¶ 11.] Mr. Wright asserts that he is a citizen of Indiana. [Dkt. 18 at 1, ¶ 2.] Accordingly, the Parties are citizens of two different states and that element of 28 U.S.C. § 1332(a)(1) is satisfied.

Turning next to consideration of whether the amount in controversy is satisfied, as an initial matter, the Court notes that "[t]he Seventh Circuit has not explicitly ruled on whether the amount in controversy requirement may be satisfied by consideration of counterclaims." *Amazing Trucking & Logistics, Inc. v. Am. Inter-Fidelity Corp.*, 2020 WL 1685716, at *1 (N.D. Ind. Apr. 7, 2020). While "[s]ome circuits have held that a counterclaim may be considered," the majority of district courts in the Seventh Circuit have held that "counterclaims may not be considered in establishing the amount in controversy." *Id.* Accordingly, the Court considers only Mr. Wright's original claim for declaratory judgment when determining whether the amount in controversy has been satisfied.

"In a suit for injunctive [or declaratory] relief, the amount in controversy is measured by the value of the object of the litigation," which "may be valued from either perspective—what the plaintiff stands to gain, or what it would cost the defendant to meet the plaintiff's demand." *Macken ex rel. Macken v. Jensen*, 333 F.3d 797, 799-800 (7th Cir. 2003) (internal quotation marks and citation omitted). Courts in the Seventh Circuit "may look at the stakes either

from the point of view of the plaintiff or the defendant." *Am.'s MoneyLine, Inc. v. Coleman*, 360 F.3d 782, 787 (7th Cir. 2004).

The Seventh Circuit's opinion in *Rock Energy Co-op. v. Village of Rockton* is instructive. 614 F.3d 745 (7th Cir. 2010). In *Rock Energy*, the plaintiff sought a declaration stating that the defendant did not have proper authority to purchase or condemn certain assets, though no direct steps had yet been taken to do so. *Id.* at 746. The defendant alleged that diversity jurisdiction was lacking because the plaintiff failed to demonstrate that the amount in controversy exceeded $75,000. *Id.* at 747-48. Though ultimately dismissing the case for lack of standing, the Seventh Circuit held that "[t]he record show[ed] . . . that the parties are fighting over the transfer of approximately $10 million in utility assets, and so we are satisfied that our subject-matter jurisdiction is secure." *Id.* at 748. The plaintiff's "effort to keep those assets out of the [defendant's] hands suffices to meet the amount-in-controversy requirement." *Id.*

The present dispute centers around an alleged overpayment made by Draeger to Mr. Wright of approximately $200,000. [Dkts. 61 at 3; 65-1 at 9, ¶ 44.] Even removing the amount that Draeger has already withdrawn from Mr. Wright's retirement account, Draeger alleges "the total amount Wright owes to Draeger is $173,399." [Dkt. 65-1 at 9, ¶ 46.] Mr. Wright seeks to retain that amount, which is undisputedly more than $75,000, while Draeger seeks to recover it. Accordingly, the Court is "satisfied that [its] subject-matter jurisdiction is secure," and that Mr. Wright's "effort to keep those assets out of [Draeger's] hands suffices to meet the amount-in-controversy requirement." *Rock Energy*, 614 F.3d at 748.

The Court further finds that it retains jurisdiction over Draeger's counterclaims despite the fact that it ultimately declines to grant Mr. Wright's request for declaratory judgment. "If there is no jurisdiction over the plaintiff's suit, there would be jurisdiction over the counterclaim only if,

were it filed as a free-standing suit, it would be within federal jurisdiction." *El v. AmeriCredit Fin. Servs., Inc.*, 710 F.3d 748, 752 (7th Cir. 2013).   As detailed above, the Parties' diversity of citizenship remains, and Draeger's counterclaims seek damages of at least $173,399.   Accordingly, the counterclaims would be within this Court's jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) should they have been filed as a free-standing suit.   *See also Hicks v. Midwest Transit, Inc.*, 479 F.3d 468, 470 n.2 (7th Cir. 2007) (retaining remaining counterclaims on the basis of diversity jurisdiction after the plaintiff's claims had been voluntarily dismissed).   For these reasons, the Court is confident that it has diversity jurisdiction over all of the claims at issue and now proceeds to the merits of the pending motions.

### III.   DRAEGER'S MOTION TO STRIKE PLAINTIFF'S AMENDED AFFIRMATIVE DEFENSE NO. 2 [DKT. 42.]

As detailed above, Draeger asserted a number of counterclaims against Mr. Wright.   [*See* dkt. 7.]  Mr. Wright responded to those counterclaims and asserted an affirmative defense that the counterclaims are barred by a two-year statute of limitations.  [Dkt. 12 at 8, ¶ 2.]  In turn, Draeger filed a motion to strike that affirmative defense, [dkt. 39], and Mr. Wright responded by filing an amended answer, [dkt. 40].  Draeger once again moved to strike Mr. Wright's affirmative defense. [Dkt. 42.]

Draeger argues that Mr. Wright's affirmative defense regarding the statute of limitations should be stricken for three reasons: (1) that Mr. Wright did not properly amend his answer, (2) that the alleged statute of limitations does not apply in this case, and (3) that under the applicable statutes of limitations, all of its counterclaims are timely.  [Dkt. 42 at 3-7.]  Mr. Wright denies that he did not timely amend his answer and argues that Draeger's claims are, in fact, subject to a two-year statute of limitations such that the affirmative defense should not be stricken.  [Dkt. 48 at 8-

15.]  Further, Mr. Wright argues that the Court should exclude the extrinsic evidence relied upon by Draeger in its motion.  [*Id.* at 15-16.]

The Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," either on its own or on a "motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading."  Fed. R. Civ. P. 12(f).  A party may amend its pleading once as a matter of course within 21 days after service of a motion under Rule 12(f).  Fed. R. Civ. P. 15(a)(1)(B).

Affirmative defenses "are pleadings, and, as such, must set forth a short and plain statement of the claim showing that the pleader is entitled to relief."  *Com. & Indus. Ins. Co. v. Preferred Tank & Tower, Inc.*, 2013 WL 5656110, at *2 (S.D. Ind. Oct. 16, 2013) (internal quotation marks and citation omitted).  Motions to strike "are generally disfavored as potential dilatory tactics," but may be appropriate when they remove clutter from the case such that the case will be expedited rather than delayed.  *Id.*  The Seventh Circuit has held that "[a]ffirmative defenses will be stricken only when they are insufficient on the face of the pleadings.  Motions to strike . . . will not be granted unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense, and are inferable from the pleadings."  *Id.* (citing *Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1400 (7th Cir. 1991)).  "Normally, statute of limitations arguments are not appropriate for motions to dismiss," and as "long as there is a plausible theory . . . questions of timeliness are left for summary judgment (or ultimately trial), at which point the district court may determine compliance with the statute of limitations based on a more complete factual record."  *Aldrich v. Nat'l Collegiate Athletic Ass'n*, 565 F. Supp. 3d 1094, 1103-04 (S.D. Ind. 2021) (internal quotation marks and citation omitted).

The Court finds that it is not appropriate to strike Mr. Wright's affirmative defense in this case.  First, it disagrees with Draeger that Mr. Wright did not timely amend his answer.  Draeger filed its first Motion to Strike Mr. Wright's affirmative defense on April 14, 2023.[3]  [Dkt. 39.]  Mr. Wright responded by filing his Amended Answer on April 21, 2023, [dkt. 40], which was within the 21 days he was allowed to do so by Federal Rule of Civil Procedure 15(a)(1)(B).

Second, though titled as a Motion to Strike, Draeger's motion does not argue that the affirmative defense is "insufficient on the face of the pleadings."  *Com. & Indus. Ins. Co.*, 2013 WL 5656110, at *2.  Rather, it argues that the affirmative defense would not be successful as applied to the facts of this case.  [Dkt. 42 at 4-7.]  Draeger relies on extrinsic evidence to support its argument that the statute of limitations does not apply, [*id.* at 5-6], and such evidence is more appropriately considered on a motion for summary judgment, *see Doe v. Trs. of Ind. Univ.*, 2021 WL 2213257, at *1 (S.D. Ind. May 4, 2021).  These substantive arguments regarding whether the statute of limitations applies to any (or all) of the Parties' various claims are, in fact, appropriately addressed below in the Court's ruling on the Parties' cross motions for summary judgment.  For these reasons, Draeger's Motion to Strike Plaintiff's Amended Affirmative Defense No. 2 is **DENIED**.  [Dkt. 42.]

---

[3] In fact, it appears that Draeger's first Motion to Strike, [dkt. 39], was not timely filed.  Draeger filed said motion on April 14, 2023, several months after Mr. Wright filed his initial Answer on November 23, 2022.  [Dkt. 12.]  This is well after the 21 days within which a Rule 12(f) motion may be filed.  *See* Fed. R. Civ. P. 12(f)(2) (allowing a motion to strike to be filed "on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading").

## IV.   MR. WRIGHT'S MOTION FOR JUDGMENT ON THE PLEADINGS [DKT. 47.]

Mr. Wright filed a Motion for Judgment on the Pleadings, arguing that judgment should be entered in his favor on his claim, on Draeger's counterclaims, and on his statute of limitations affirmative defense.  [Dkt. 47 at 1-2.]  Mr. Wright subsequently filed a Motion for Summary Judgment, [dkt. 60], and states that said summary judgment motion is what he "would have filed in place of his Motion for Judgment on the Pleadings if he had received complete and timely discovery responses," and proposes that "the most efficient path forward would be to merge the briefing on [that] motion into the briefing on his Motion for Summary Judgment."  [Dkt. 64 at 7.]  The Court agrees that the same arguments raised in the Parties' briefing on the Motion for Judgment on the Pleadings are also raised in the briefing on the Parties' respective Motions for Summary Judgment.  Those motions and the arguments raised therein are fully analyzed and decided below.  Accordingly, Mr. Wright's Motion for Judgment on the Pleadings is **DENIED**. [Dkt. 47.]

## V.   CROSS MOTIONS FOR SUMMARY JUDGMENT [DKTS. 60; 65.]

Both Parties have filed Motions for Summary Judgment, which are fully briefed and pending before the Court.  [*See* dkt. 60 (Mr. Wright's Motion for Summary Judgment); dkt. 65[4] (Draeger's Motion for Summary Judgment).]  For the reasons set forth below, Mr. Wright's Motion

---

[4] The Court notes the "Oral Argument Requested" in the caption included on Draeger's Memorandum in Support of Motion for Summary Judgment, [dkt. 65-1], and in its Response to Jeff Wright's Motion for Summary Judgment, [dkt. 66].  Southern District of Indiana Local Rule 7-5 requires that a request for oral argument be made "by filing a separate motion explaining why oral argument is necessary and estimating how long the court should allow for the argument," which "must be filed and served with the supporting brief, response brief, or reply brief."  Draeger has not filed a separate motion in support of its request, and the Court declines to set oral argument on its own as it finds it unnecessary to decide the pending motions.  S.D. Ind. L.R. 56-1(j) ("The court will decide summary judgment motions without oral argument or hearing unless the court otherwise directs or grants a request under S.D. Ind. L.R. 7-5.").

for Summary Judgment, [dkt. 60], is **GRANTED IN PART** and **DENIED IN PART,** and Draeger's Motion for Summary Judgment, [dkt. 65], is **DENIED.**

### A. Applicable Standard

A motion for summary judgment asks the court to find that a trial is unnecessary because there is no genuine dispute as to any material fact, and instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). On summary judgment, a party must show what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). "Summary judgment is not a time to be coy." *King v. Ford Motor Co.*, 872 F.3d 833, 840 (7th Cir. 2017) (quoting *Sommerfield v. City of Chicago*, 863 F.3d 645, 649 (7th Cir. 2017)). Rather, at the summary judgment stage, "[t]he parties are required to put their evidentiary cards on the table." *Sommerfield*, 863 F.3d at 649.

The moving party is entitled to summary judgment if no reasonable factfinder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009), *abrogated on other grounds by Jones v. Carter*, 915 F.3d 1147, 1149-50 (7th Cir. 2019). The trial court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

Each fact asserted in support of or in opposition to a motion for summary judgment must be supported by "a citation to a discovery response, a deposition, an affidavit, or other admissible evidence." S.D. Ind. L.R. 56-1(e). And each "citation must refer to a page or paragraph number or otherwise similarly specify where the relevant information can be found in the supporting evidence." *Id.* The Court need only consider the cited materials and need not "scour the record"

for evidence that is potentially relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 572-73 (7th Cir. 2017) (internal quotation marks and citation omitted); *see also* Fed. R. Civ. P. 56(e)(3); S.D. Ind. L.R. 56-1(h). Where a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, the court may consider the fact undisputed for purposes of the summary judgment motion. Fed. R. Civ. P. 56(e)(2).

In deciding a motion for summary judgment, the court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *See Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Factual disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### B. Analysis

Currently pending before the Court are seven claims. First, Mr. Wright has filed a claim for declaratory judgment, asking the Court to determine "his true and accurate salary during the term of his employment by Draeger." [Dkt. 1-2 at 4.] Draeger has filed six counterclaims, including: breach of contract, [dkt. 7 at 12]; breach of fiduciary duty, [*id.* at 12-13]; unjust enrichment, [*id.* at 13-14]; conversion, [*id.* at 14]; money had and received, [*id.* at 15]; and declaratory judgment, [*id.* at 15-16].

Mr. Wright argues that summary judgment should be entered in his favor because: (1) Draeger knowingly paid Mr. Wright a $90,000 annual salary, [dkt. 61 at 3-6]; (2) Mr. Wright's salary was $90,000 as a matter of law, [*id.* at 6-12]; (3) Draeger is estopped from disputing Mr.

Wright's $90,000 annual salary, [*id.* at 12-13]; and (4) Draeger's claims are subject to a two-year statute of limitations, [*id.* at 13-16].

Draeger argues that summary judgment should be entered in its favor on Mr. Wright's claim for declaratory judgment because: (1) there is no actual controversy between the Parties regarding Mr. Wright's salary, [dkt. 65-1 at 11-14]; (2) there was no "new deal" to change Mr. Wright's salary to $90,000, [*id.* at 14-20]; and (3) the alleged overpayments were paid due to a mistake of fact and must be returned, [*id.* at 20-21]. Further, Draeger argues that summary judgment should be entered in its favor on each of its six counterclaims. [*Id.* at 21-29.]

The Court will address each of the Parties' claims and arguments as necessary to resolve the cross motions for summary judgment.

### *1.  The Parties' respective requests for declaratory judgment*

Mr. Wright filed this suit seeking "a judicial determination of [his] true and accurate salary during his period of employment by Draeger." [Dkt. 1-2 at 4, ¶ 29.] Mr. Wright states that "such a determination will clearly establish the parties' rights and obligations to one another and put the parties in a position to resolve their dispute since all of the potential claims by either party arise from a dispute as to Wright's true salary." [*Id.*]

In one of its counterclaims, Draeger also seeks declaratory judgment that "Draeger's withdrawal of assets from Wright's Plan was lawful, and that Wright has no claim to those assets under a convers[ion] claim or any other legal theory;" that "Draeger's withdrawal of its matching contributions into Wright's Plan was lawful, and that Wright has no claim to those contributions under a convers[ion] claim or any other legal theory;" and that "Draeger's withdrawal of profit sharing contributions that Draeger made into Wright's Plan was lawful, and that Wright has no claim to those contributions under a convers[ion] claim or any other legal theory." [Dkt. 7 at 16.]

Indiana's Declaratory Judgment Statute provides that:

Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

Ind. Code § 34-14-1-2.

It is undisputed that both Parties' requests for declaratory judgment concern past behavior and that nothing the Court would declare would inform future action by either Party. "The primary purpose of declaratory relief is to permit a plaintiff to obtain a declaration of its rights and liabilities before proceeding with a course of conduct for which it might be held liable, not to declare nonliability for past conduct." *Mid-Century Ins. Co. v. Estate of Morris ex rel. Morris*, 966 N.E.2d 681, 688 (Ind. Ct. App. 2012) (internal quotation marks and citation omitted). Accordingly, a "declaratory judgment is not available where the judgment cannot guide and protect the petitioner with regard to some future acts." *Id.* There may be "no basis for a declaratory judgment action" determining the rights under a contract when the alleged breaches of contract have already occurred, and a declaratory judgment would not allow the parties to avoid accruing future damages. *Glob. Parking Sys. of Ind., Inc. v. Parking Sols., Inc.*, 2015 WL 1186787, at *11 (S.D. Ind. Mar. 16, 2015). Whether to entertain a motion for declaratory judgment is within the discretion of the trial court.[5] *Mid-Century Ins. Co.*, 966 N.E.2d at 687.

---

[5] The Court notes that some courts have held that federal courts sitting in diversity should apply the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, rather than state law, because the Act is procedural rather than substantive. *See Cincinnati Ins. Co. v. Maint. Dynamics, Inc.*, 2013 WL 350080, at *3 (N.D. Ind. Jan. 28, 2013) (holding that the "Federal Declaratory Judgment Act is a procedural statute that creates no substantive rights," and therefore "the federal, rather than state, Declaratory Judgment Act controls"). The result in this case is the same whether federal law or Indiana law is applied. *See id.* ("By its own terms, § 2201 provides the Court 'wide discretion in deciding whether or not to exercise this authority.'" (citation omitted)); *Troya v. Wilson*, 2017 WL

Mr. Wright asks the Court to determine his "true and accurate salary during his period of employment by Draeger," though his employment with Draeger has undisputedly terminated before this litigation and any determination of his salary will not inform any future action by either Party since he is no longer employed by Draeger. Such a determination would not be made for the purpose of allowing Mr. Wright to "proceed[] with a course of conduct for which [he] might be held liable," but rather "declare nonliability for past conduct." *Mid-Century Ins. Co.*, 966 N.E.2d at 688. The same is true with respect to Draeger's request for declaratory judgment regarding its withdrawal of assets and contributions. This course of action has already been taken—*i.e.*, what's done, is done. The Parties cannot use a declaratory judgment "solely to adjudicate [their] past conduct," and such determinations would not serve to affect any future behavior. *Troya*, 2017 WL 1346993, at *3. Accordingly, the Court finds that neither Party's request for declaratory judgment is proper, and it will not further address their respective requests on those claims. Thus, Draeger's counterclaims are all that remain.

### 2. Draeger's counterclaims are barred by the applicable statute of limitations

In response to Draeger's counterclaims, Mr. Wright asserts as an affirmative defense that the counterclaims are barred by the two-year statute of limitations set forth in Indiana Code § 34-11-2-1, which applies to claims relating to a term, condition, or privilege of employment except when the claims are based upon a written contract. [Dkt. 40 at 8, ¶ 2.] To determine whether Draeger's counterclaims are timely, the Court must accordingly determine (1) whether the Parties had a written contract; (2) whether Draeger's counterclaims relate to "a term, condition, or privilege of employment"; (3) when the statute of limitations began to accrue; and (4) whether the statute of

---

1346993, at *3 (S.D. Ind. Apr. 12, 2017) (applying federal law and holding that "declaratory judgment cannot be used solely to adjudicate [a defendant's] past conduct and not to affect future behavior" (internal quotation marks and citation omitted)).

limitations should be tolled.  The Court will address each point in turn, and for the reasons set forth

herein, finds that each of Draeger's counterclaims are time barred.

### i.   *The Parties did not have a written contract*

The Parties dispute whether there is a written contract governing Mr. Wright's employment

with Draeger.  This matters because whether there is a written contract regarding Mr. Wright's

employment impacts which statute of limitations applies.  The two-year statute of limitations set

forth in Indiana Code § 34-11-2-1 will only apply if there is no written contract, as Mr. Wright

contends.  But a ten-year statute of limitations set forth in Indiana Code § 34-11-2-11 could apply

if there is a written contract, as Draeger contends.  While the Court will more fully analyze the

applicable statute of limitations later in this Order, it first must address the Parties' dispute

regarding whether there is a written contract governing Mr. Wright's employment with Draeger.

Draeger argues that an offer letter sent by Draeger and signed by Mr. Wright before his

employment began constitutes a written contract and, thus, the two-year statute of limitations does

not apply.  [Dkts. 7-1; 66 at 25-26.]  Draeger argues that the fact that the offer letter stated it was

not a contract "is not relevant."  [Dkt. 66 at 25-26.]  Instead, Draeger asks the Court to apply the

ten-year statute of limitations that applies to written contracts under Indiana law.[6]  [*Id.* at 25 (citing

Ind. Code § 34-11-2-11).]

Mr. Wright argues that the signed offer letter is not a written contract because the letter

explicitly disclaims being a contract for employment and the Parties never followed the salary

---

[6] The Court acknowledges Draeger's argument that "[e]ach of Draeger's claims are subject to their
own statute of limitations."  [Dkt. 66 at 25.]  Because the Court ultimately holds that each of
Draeger's counterclaims are subject to the two-year statute of limitations set forth in Indiana Code
§ 34-11-2-1, it need not further address the other statutes of limitations cited by Draeger.  *See infra*
Section V.B.2.ii.

provided for in the letter since Mr. Wright immediately began receiving an annualized salary of $90,000.  [Dkts. 61 at 15; 69 at 8-9.]

The Court will look to Indiana law to determine what constitutes a "written contract."  *See RLI Ins. Co. v. Conseco, Inc.*, 543 F.3d 384, 390 (7th Cir. 2008) ("When neither party raises a conflict of law issue in a diversity case, the applicable law is that of the state in which the federal court sits. . . . Because the parties do not raise a conflict of law issue and this case was filed in a federal court in Indiana, we apply Indiana law.").   Under Indiana law, "[w]here the language of a written instrument is unambiguous, the intent of the parties is to be determined from its four corners.  Parol or extrinsic evidence is not admissible to expand, vary, or explain it, or to create an ambiguity."  *Mittal Steel USA Inc. v. Hartford Ins. Co.*, 2013 WL 12310820, at *2 (N.D. Ind. July 24, 2013).

A signed writing will not constitute a contract when it includes disclaimer language providing that it is not a contract or where the writing gives one party the unilateral power to modify its terms.  *Ghrist v. ATOS IT Sols. and Servs., Inc.*, 2018 WL 6249924, at *2 n.1 (S.D. Ind. Nov. 28, 2018) ("[T]he relevant question here is whether one could reasonably believe that the distribution of the 2016 Sales Plan was a contractual offer, given the disclaimer and the unilateral ability of one party to modify its terms. . . . The Court holds that, as a matter of law, one could not."); *Hawranek v. Haier US Appliance Sols., Inc.*, 2019 WL 1429246, at *7 (S.D. Ind. Mar. 29, 2019) (holding that because an employee handbook "contain[ed] a clear disclaimer that it is not an employment contract, it was not a contract").  An "offer letter [that] appears to be nothing more than an administrative document that gives [an individual] information related to [his]

employment" is not a contract.[7]  *Cmty. Found. of Nw. Ind., Inc. v. Miranda*, 120 N.E.3d 1090, 1100 (Ind. Ct. App. 2019).

Draeger's offer letter to Mr. Wright explicitly states that it "does not constitute a contract of employment and that [Mr. Wright] will continue to be an at-will employee for all purposes." [Dkt. 7-1 at 4.]  This language is unambiguous.  The Court is especially unpersuaded by Draeger's argument to the contrary, given that Draeger appears to have drafted the offer letter and the disclaimer language included therein.  *Cf. Hess v. Biomet, Inc.*, 2021 WL 3047071, at *1 (N.D. Ind. July 20, 2021) (noting that a contract may be construed against the party that drafted it).  For these reasons, the Court concludes that no written contract existed governing Mr. Wright's employment with Draeger.

> ii. *Each of Draeger's counterclaims relate to a "term, condition, or privilege of employment," which is governed by a two-year statute of limitations*

Mr. Wright argues that "[e]ven if Draeger could prevail on its claims, its recovery would be limited by [the] two-year statute of limitations" that applies to actions "relating to the terms, conditions, and privileges of employment" that are not based upon a written contract.  [Dkt. 61 at 13 (citing Ind. Code § 34-11-2-1).]  Mr. Wright argues that this statute of limitations applies to each of Draeger's counterclaims because the "blanket statute of limitations applies regardless of the specific cause of action so long as the substance of the claim" falls within the statute's scope.  [*Id.*]  Regardless of how the causes of action are labeled, Mr. Wright argues that each of Draeger's

---

[7] The Court does not find the case relied upon by Draeger, *Buschman v. ADS Corp.*, 782 N.E.2d 423, 428 (Ind. Ct. App. 2003), to be persuasive on this point.  While *Buschman* does uphold the terms of an offer letter signed by the parties in that case, even though the letter included language stating that it should not be considered an employment contract, *Buschman* did not explicitly analyze or decide the effect of that language.  Accordingly, this Court will instead look to the cases cited herein that explicitly address the question of contractual formation when disclaimer language is present.

claims are premised on an alleged overpayment—*i.e.*, that "[i]f Wright's base salary was $50,000 then Dra[e]ger might recover on its claims," but "if Wright's salary was $90,000, then Draeger's claims fail." [*Id.* at 15.] "At its core, this case is a dispute over Wright's salary," and "determination of Wright's salary is dispositive to every claim in this case." [*Id.*] Wright distinguishes the present case from cases involving fraud because "there is no allegation that Wright took any affirmative action to influence the salary that Draeger paid him," nor is there any allegation that Mr. Wright "took any affirmative steps to conceal the wages that he received." [*Id.* at 16.]

Draeger responds that the two-year statute of limitations should not apply because its claims "are not related to the terms, conditions, or privileges of Wright's employment," but rather are "related to Wright's unlawful conduct of refusing to repay funds that were mistakenly paid to him and failing to inform Draeger of its mistake despite being a fiduciary to Draeger." [Dkt. 66 at 24.] Draeger argues that "[e]xtra salary payments that employees have not earned and otherwise have no right to keep are not a 'privilege of employment,'" and thus the two-year statute of limitations should not apply. [*Id.* at 24-25.] Rather, Draeger contends that the various statutes of limitations for each specific cause of action should apply instead. [*Id.* at 25.]

"A district court exercising diversity jurisdiction applies the statute of limitations of the forum state." *Orgone Cap. III, LLC v. Daubenspeck*, 912 F.3d 1039, 1044 (7th Cir. 2019). In this case, Indiana's statute of limitations governs. Indiana Code § 34-11-2-1 provides:

> An action relating to the terms, conditions, and privileges of employment except actions based upon a written contract (including, but not limited to, hiring or the failure to hire, suspension, discharge, discipline, promotion, demotion, retirement, wages, or salary) must be brought within two (2) years of the date of the act or omission complained of.

Ind. Code § 34-11-2-1.

The Seventh Circuit has held that "the nature of the [party's] legal theory," rather than the specific cause of action, "determines which statute of limitations applies." *Miller v. Int'l Harvester Co.*, 811 F.2d 1150, 1152 (7th Cir. 1987).  In other words, "[s]ubstance prevails over form," and Indiana courts have rebuffed "artful attempts to avoid applicable statutes of limitation by technical pleading." *Peake v. Int'l Harvester Co.*, 489 N.E.2d 102, 105-06 (Ind. Ct. App. 1986).  The applicability of Indiana Code § 34-11-2-1 "is not dependent upon whether the action arose out of the employment relationship but whether it relates to a term, condition, or privilege of employment." *Meek Mack, Inc. v. Colvin*, 495 N.E.2d 813, 815 (Ind. Ct. App. 1986).

The Seventh Circuit has held that the two-year statute of limitations appropriately applies when an employee claims that he was induced to quit after being promised that he would obtain a pension for which he was not actually eligible. *Miller*, 811 F.2d at 1151.  Similarly, the two-year statute of limitations bars a claim that an employee was entitled to compensation under an agreement to reward employees who had made valuable suggestions. *Peake*, 489 N.E.2d at 106. The two-year statute of limitations has been found inapplicable, however, when an employee was accused of making incorrect journal entries on which his employer relied when giving him bonuses. *Meek Mack*, 495 N.E.2d at 814-15. *Meek Mack* held that the six-year statute of limitations for fraud should apply in that case because the nature of the legal theory sounded in fraud. *Id.* at 815.  In *Miller*, the Seventh Circuit distinguished *Meek Mack* because in that case, "there was no dispute over the terms, conditions, or privileges of employment" when the employee "was not claiming the right to jigger the books in order to increase his bonus and the company's tax liability." 811 F.2d at 1152.

The Court finds that each of Draeger's counterclaims are based upon "a term, condition, or privilege of employment," and thus the two-year statute of limitations found in Indiana Code § 34-

11-2-1 applies.  Though the Parties raise a number of arguments in hundreds of pages of briefing, their arguments all boil down to a disagreement over Mr. Wright's salary.  Draeger's counterclaims all depend on Mr. Wright retaining compensation amounting to $90,000 annually, when he allegedly should have only been paid $50,000 annually.  This is more analogous to cases such as *Miller* and *Peake*, which involved disagreements as to what a particular employee alleged he was entitled to be paid.  Here, the dispute over Mr. Wright's salary is similar to the disputed right to pensions and payments from employee incentive programs.  The Court finds *Meek Mack* to be distinguishable because the facts of that case involved express action on behalf of an employee who intentionally made incorrect journal entries that resulted in his overpayment.  Neither Party has alleged or designated any evidence demonstrating that Mr. Wright took any actions to increase the base salary he was paid by Draeger or actively concealed the amount of the payments he received.  Unlike the plaintiff in *Meek Mack*, who could "not claim[] the right to jigger the books," Mr. Wright is explicitly arguing that he had a right to the $90,000 annual salary that Draeger paid him.  *Miller*, 811 F.2d at 1152.

The Court concludes that the two-year statute of limitations applies to each of Draeger's counterclaims because each of these claims necessarily ask, and are inherently based upon, whether Mr. Wright's annual salary was $50,000 or $90,000.  First, in Draeger's claim for breach of contract, Draeger alleges that Mr. Wright breached his contract by "retaining overpaid compensation in the aggregate sum of $200,000" and "failing to notify Draeger that he had been overpaid, for a period of five years."  [Dkt. 7 at 12, ¶¶ 48-49.]  Second, Draeger's claim for breach of fiduciary duty is based on Mr. Wright allegedly "consistently failing to inform Draeger, over a period of five years, that he was being overpaid."  [*Id.* at 12, ¶ 53.]  Third, Draeger's claim for unjust enrichment alleges that Mr. Wright "received a benefit, to Draeger's detriment, when he

20

took possession of the overpaid compensation and willfully refused to turn over what was not rightfully his when Draeger requested return of the overpaid compensation." [*Id.* at 13, ¶ 58.] Fourth, Draeger's claim for conversion alleges that Mr. Wright "has knowingly and intentionally exerted unauthorized control over the overpaid compensation." [*Id.* at 14, ¶ 64.] Fifth and finally, Draeger's claim for money had and received alleges that Mr. Wright "is liable to make restitution to Draeger in the amount of the overpaid compensation." [*Id.* at 15, ¶ 68.]

For these reasons, the Court finds that the two-year statute of limitations set forth in Indiana Code § 34-11-2-1 applies to each of Draeger's remaining counterclaims in this action because each relates to a "term, condition, or privilege of employment" and, thus, is governed by that statute. The Court will next turn to the question regarding when that statute began to run to determine if any of Draeger's remaining counterclaims are timely.

### iii. The statute of limitations began accruing when Draeger became aware that it was paying Mr. Wright $90,000

Mr. Wright argues that Draeger had knowledge of the amount it was paying him because his compensation was evidenced on his bi-weekly paychecks, annual W-2s, and Personnel Action Forms ("PAFs") that were signed and approved by Draeger's human resources personnel and by his supervisors. [Dkt. 61 at 3-6.] Mr. Wright points out that one of the approvers of certain PAFs, Patrick Vignona, was his direct supervisor and the same individual who negotiated the terms of his employment. [*Id.* at 5.] Another approver, Deanna Glose, the Senior Director of Human Resources, was also the individual who signed the offer letter on behalf of Draeger. [Dkt. 67 at 8.] These PAFs date back to March 27, 2017, and show Mr. Wright's annual salary as $90,000; in fact, the only PAF to show Mr. Wright's annual salary as $50,000 was dated June 29, 2022, the day Mr. Wright was terminated. [Dkt. 61 at 5 (citing dkt. 62-3 at 9, 27).]

21

Draeger disagrees that it had knowledge that Mr. Wright was being paid an annual salary of $90,000, stating that "Wright does not and cannot allege that the payroll staff who issued Wright's paychecks knew that Wright was supposed to be paid a different amount." [Dkt. 66 at 13.] Conversely, "Wright's managers knew how much Wright was supposed to be paid but did not have any knowledge of the actual amount of his payroll checks." [*Id.*] Draeger provides declarations from three Draeger supervisors—Patrick Vignona, Steven Menet, and Steven Burrell—stating that they did not see (or recall seeing) the provided PAFs or the section of the PAF stating Mr. Wright's salary. [*Id.* at 14-15 (citing dkts. 66-3 at 2, 5-6, ¶¶ 3, 34-36; 66-4 at 2-3, ¶¶ 4-5, 18; 66-5 at 2, 5, ¶¶ 4, 26-27).] Draeger also argues that "[o]ther than the very first PAF memorializing Wright's hiring, which plainly contains an error, the subsequent PAFs have nothing to do with Wright's base salary (they related to things like special sales promotions or payments of a bonus)." [*Id.* at 14.]

"Under Indiana's discovery rule, a cause of action accrues, and the statute of limitation begins to run, when the plaintiff knew or in the exercise of ordinary diligence could have discovered that an injury had been sustained as a result of the tortious act of another." *Del Vecchio v. Conseco, Inc.*, 788 N.E.2d 446, 449 (Ind. Ct. App. 2003). "It is not necessary that the extent of the damage be known or even ascertainable, but only that some ascertainable damage has occurred." *C & E Corp. v. Ramco Indus., Inc.*, 717 N.E.2d 642, 644 (Ind. Ct. App. 1999). The statute of limitations will "begin[] to run when the plaintiff learns of facts which should lead to the discovery of his cause of action even if his relationship with the tortfeasor continues beyond that point." *Id.* at 645.

"When an employee is acting within the scope of her employment, her knowledge is typically imputed to the employer." *Dana Container, Inc. v. Sec'y of Lab.*, 847 F.3d 495, 499 (7th

Cir. 2017).  Conduct is within the scope of employment when it is actuated, at least in part, by a purpose to serve the employer.  *Id.* (citation omitted).  *See also Acuity v. Nuthak Ins., LLC*, 2011 WL 5179156, at *9 (S.D. Ind. Oct. 31, 2011) ("Indiana subscribes to the imputed knowledge doctrine, under which an agent's knowledge gained within the scope of his agency is imputed to the principal, even if the principal does not actually know what the agent knows.").  Accordingly, key to the determination of when the statute of limitations has begun to accrue is when an employer, "through any of its employees—knew or should have known" that the injury had occurred.  *See id.* at *4.  Under Indiana law, an individual is further "presumed to understand the documents which he signs."  *Clanton v. United Skates of Am.*, 686 N.E.2d 896, 899-900 (Ind. Ct. App. 1997).

The Court finds *Smith v. Beasley* to be particularly instructive on the issue of when the statute of limitations began to accrue in this case.  504 N.E.2d 1028 (Ind. Ct. App. 1987).  In *Smith*, the plaintiff alleged that he had been wrongfully denied a percentage pay increase.  *Id.* at 1028. The plaintiff filed a lawsuit seeking backpay approximately eight years after the percentage pay increase was implemented, arguing that his reduced earnings were "a continuing wrong and the statute of limitations should run from when each paycheck was received."  *Id.* at 1028-29.  Under that theory, the plaintiff would have been able to recover for wages paid in the prior two years and have his future wages increased.  *Id.* at 1029.  *Smith* noted that "Indiana follows the general rule where an obligation is payable in installments, the statute of limitations runs as to each installment as it becomes due," but did not agree that a continuing wrong had occurred or that the statute of limitations should run from the time each paycheck was received.  *Id.*  *Smith* held that the statute of limitations began to run at the time the pay increase had gone into effect, and "[a]lthough the alleged wrong may have a present impact upon his salary, it is not a continuing wrong."  *Id.*

The Parties have designated a number of pieces of undisputed evidence showing that Draeger employees had knowledge that Mr. Wright was being paid a $90,000 annual salary from the start of his employment.  Draeger has produced Earning Statements ranging from April 7, 2017, through April 1, 2022, clearly showing bi-weekly earnings totaling approximately $3,460, which amounts to $90,000 annually.  [Dkt. 66-8 at 2-198.]  There are also W-2s from 2017, 2018, 2019, 2020, 2021, and 2022 depicting how much Mr. Wright was paid during his employment with Draeger.  [Dkt. 62-1 at 5-19.]  While the Court acknowledges that the W-2s do not show Mr. Wright's $90,000 annual salary as clearly as the Earning Statements or PAFs, the W-2s do state Mr. Wright's gross pay for each year and show that it was substantially more than $50,000 for the entirety of his employment.  [Dkt. 62-1 at 5-19.]  Draeger has agreed that the W-2s show Wright's "annual earnings."  [Dkt. 7 at 3, ¶ 14.]

Additionally, and perhaps most persuasively, there are PAFs that clearly show Mr. Wright's "Annual Salary" of $90,000, and his "Comp. Rate" of $3,461.54, which annualizes to $90,000. [Dkt. 62-3 at 9, 12, 15, 17, 19, 21, and 25.]  The annual salary and compensation rate are clearly shown in the PAFs as set forth in the image below:

| COMP RATE | RATE TYPE | ANNUAL SALARY |
|---|---|---|
| $3,461.54 | | $90,000.00 |
| $ | Bi-Weekly | $ |

[*See, e.g.*, dkt. 62-3 at 9.]

These PAFs are given effective dates of March 27, 2017; August 12, 2019; November 4, 2019; November 29, 2019; December 16, 2019; May 18, 2020; and February 8, 2021.  [*Id.*] Several of these PAFs—including the PAF effective when Mr. Wright began working for Draeger on March 27, 2017—are signed by an "HR Representative" under the "Approvals" section.  [*Id.* at

9, 12, 15, 19, 21, and 25.]  Some of these PAFs were also approved by a manager or supervisor via email.  [*See, e.g.*, *id.* at 10 (email from Jennifer Alvarez, Human Resources, to Patrick Vignona asking "[a]s per procedure, please review the attached PAF and if acceptable please approve," followed by a response from Mr. Vignona stating "approve").]  Some of the PAFs also include initials indicating sign-off in the section titled "SAP Entry Quality Assurance Check," though it is unclear on the face of the documents exactly to whom the initials belong.  [*Id.* at 9, 15.]  These PAFs, which were created by Draeger throughout Mr. Wright's employment, are clear, undisputed evidence that Draeger knew Mr. Wright's "Annual Salary" was "$90,000.00."  [*See, e.g.*, dkt. 62-3 at 9.]

Draeger provided declarations from three employees, including Patrick Vignona, stating that they did not see (or recall seeing) the provided PAFs or the section of the PAF stating Mr. Wright's salary.  Even accepting these statements as true, there is still undisputed evidence that other Draeger employees saw and approved the PAFs.  One of these employees was Deanna Glose, the Senior Director of Human Resources, who signed Mr. Wright's offer letter dated March 3, 2017, before approving a PAF listing Mr. Wright's annual salary at $90,000 that was sent to payroll on March 27, 2017.  [Dkts. 62-3 at 9; 7-1 at 4.]

These Draeger employees, acting within the scope of their employment when preparing and approving these various documents, are presumed to have knowledge of their contents and the employees' knowledge is appropriately imputed to Draeger.  *See Clanton*, 686 N.E.2d at 899-900; *Acuity*, 2011 WL 5179156, at *9.  The same is true of the information regarding compensation contained in Mr. Wright's Earning Statements and W-2s.  Draeger has neither argued nor provided evidence that these documents were not in fact produced by Draeger or that employees other than Patrick Vignona, Steven Burrell, and Steven Menet did not (or do not recall) seeing or signing

these documents.  At the very least, the undisputed documentation seen and approved by Draeger employees is enough to show that "in the exercise of ordinary diligence," Draeger "could have discovered that an injury had been sustained." *Del Vecchio*, 788 N.E.2d at 449.  Accordingly, the Court finds that the undisputed evidence shows that Draeger had knowledge that it was compensating Mr. Wright an amount that annualized to $90,000 beginning on March 27, 2017, when the first PAF was sent to payroll.  [Dkt. 62-3 at 9.]  The undisputed evidence also shows that Draeger's knowledge of this was reinforced several times over the course of Mr. Wright's employment.  Thus, even making all reasonable inferences in favor of Draeger, the Court finds that the two-year statute of limitations started to run on March 27, 2017.[8]

### iv.  The statute of limitations should not be tolled

Draeger argues that if the two-year statute of limitations does apply, its counterclaims "should be tolled pursuant to the discovery rule, the doctrine of continuing wrong, and Wright's fraudulent concealment of the overpayment."  [Dkt. 66 at 26-27.]  Mr. Wright responds that tolling is not appropriate because Draeger was aware of the salary it was paying Mr. Wright from day one of his employment.  [Dkt. 69 at 9-11.]

---

[8] Draeger does not argue that it was not aware of Mr. Wright's total annual salary until he had been employed and paid for an entire year.  The Court need not address arguments not raised by the Parties. *See Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 397 (7th Cir. 2000) (emphasizing that the Seventh Circuit has "repeatedly stated [i]t is not this court's responsibility to research and construct the parties' arguments" (internal quotation marks and citation omitted)).  Even if Draeger had made such an argument, however, the result in this case would be the same because the two-year statute of limitations would have started running on March 27, 2018, and would have expired on March 27, 2020.  Since Draeger did not assert its claims until 2022, they would still be time-barred.

The Court has already addressed the Parties' arguments regarding the discovery rule and has held that the statute of limitations began to run on March 27, 2017. *See supra* Section V.B.2.iii. Thus, it will not address that rule further.

"The doctrine of continuing wrong applies where an entire course of conduct combines to produce an injury. When this doctrine attaches, the statutory limitations period begins to run at the end of the continuing wrongful act." *Palmer v. Gorecki*, 844 N.E.2d 149, 156 (Ind. Ct. App. 2006) (citation omitted). The doctrine of fraudulent concealment "delays accrual of an action and the commencement of the limitations period when the defendant has concealed the existence of the cause of action from the plaintiff." *Outzen v. Kapsch Trafficcom USA, Inc.*, 2021 WL 914021, at *8 (S.D. Ind. Mar. 10, 2021) (internal quotation marks and citation omitted). Fraudulent concealment requires that "the fraud must be of such character as to prevent inquiry, or to elude investigation, or to mislead the party who claims the cause of action." *Colbert v. Waitt*, 445 N.E.2d 1000, 1003 (Ind. Ct. App. 1982).

The statute of limitations will not be tolled under either doctrine when the injured party learns of facts that would lead to the discovery of the cause of action. *See id.* at 1003 n.5 ("If the [party] learns of the [injury] or learns information which would lead to discovery of it, had the [party] exercised diligence to discover it, the running of the statute also commences. The knowledge of the condition or 'injury' rather than its reason destroys the estoppel." (citation omitted)); *Anonymous Physician v. Rogers*, 20 N.E.3d 192, 198 (Ind. Ct. App. 2014) ("[T]he doctrine of continuing wrong only tolls the statute of limitations until such time as the plaintiff learns facts which should lead to the discovery of the cause of action.").

For the reasons detailed above, the Court holds that Draeger had knowledge that Mr. Wright was being paid an annualized salary of $90,000 on March 27, 2017, when Draeger

employees began approving documentation explicitly stating Mr. Wright's annual salary.  Given Draeger's knowledge, tolling of the statute of limitations under either the doctrine of continuing wrong or the doctrine of fraudulent concealment is not warranted.  Further, as for any fraudulent concealment, other than alleging that Mr. Wright "fail[ed] to notify Draeger that he had been receiving incorrect payments for five years," [dkt. 72 at 13], Draeger does not put forth any evidence to support its assertion that Mr. Wright did anything to conceal what he was being paid from Draeger.  "[S]ummary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson*, 325 F.3d at 901 (internal quotation marks and citation omitted).  Draeger does not put forth any evidence supporting its bare assertion of fraud or fraudulent concealment; thus, the Court will not address its unsupported assertion further.  For these reasons, the Court concludes that Draeger's claims are time barred by the two-year statute of limitations set forth in Indiana Code § 34-11-2-1.

### C.  Effect of Decisions

The Court has addressed and disposed of each of the Parties' claims in this Order.  Mr. Wright only brought one claim in this litigation, requesting a declaratory judgment regarding his annual salary.  The Court has declined to enter declaratory judgment because the facts of this case only concern past behavior, and nothing the Court would declare would inform future action by either Party.  Though Mr. Wright asserts in his Complaint that "Draeger withdrew $28,908.00 from [his] Fidelity 401K account" without his permission, [dkt. 1-2 at 4, ¶ 25], he did not bring a legal claim for the return of that money and the Court need not address that assertion further.

Turning to Draeger's counterclaims, one of those claims was for a declaratory judgment that the Court similarly declines to enter since it only concerns past behavior.  But with respect to

Draeger's five other counterclaims, the Court holds that the two-year statute of limitations provided by Indiana Code § 34-11-2-1 applies to all of those claims and that Draeger had to file them before March 27, 2019 in order for them to be timely.  Since Draeger did not file those claims until 2022, those claims are time-barred.  Because the Court has dispositively addressed all the claims brought by the Parties in this action, this case is over and neither Party shall take anything by way of this action.

## VI.    CONCLUSION

Defendant Draeger, Inc.'s Motion to Strike Plaintiff's Amended Affirmative Defense No. 2, [dkt. 42], Plaintiff Jeff Wright's Motion for Judgment on the Pleadings, [dkt. 47], and Defendant Draeger, Inc.'s Motion for Summary Judgment, [dkt. 65], are **DENIED.**  Plaintiff Jeff Wright's Motion for Summary Judgment, [dkt. 60], is **GRANTED IN PART** and **DENIED IN PART.**  For the reasons set forth herein, the Court concludes that neither Party shall take anything by way of the claims presented to the Court in its pleadings.  Final judgment shall enter accordingly.

**SO ORDERED.**

Date: 10/20/2023

*Kellie M. Barr*

Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

Distribution:

Brian V. Alcala
NIXON PEABODY LLP
bvalcala@nixonpeabody.com

Christina E. Kurow
Nixon Peabody LLP
ckurow@nixonpeabody.com

James A. Nickloy
Nickloy, Albright & Gordon, LLP
alex@nickloylaw.com

Craig Charles Siebe
Nickloy, Albright & Gordn, LLP
craig@nickloylaw.com

Ethan E. Trull
Nixon Peabody LLP
etrull@nixonpeabody.com